# ORSZÁGOS FORDÍTÓ ÉS FORDÍTÁSHITELESÍTŐ IRODA

Hungarian National Office for Translations and Attestations
Ungarische Amtsstelle für Übersetzungen und Beglaubigungen

Венгерское Государственное Бюро Переводов и Заверений
Bureau National, Hongrois de Traductions et de Légalisations

**BUDAPEST**

Translation from Hungarian

Chief Prosecutor's Office --------------------------

Department of Special Cases -----------------------

1055 Budapest, Markó u. 16. -----------------------

Phone: 269-2600 -------------------------------------

No. KF. 3480/2003/89-I ------------------------------

Federal Department of Justice of the --------------

United States of America ---------------------------

**Washington** ---------------------------------------

Dear Madams/Sirs, ----------------------------------

We request you to provide legal assistance in the
criminal case instituted at the Directorate
Against Organised Crime, Criminal Directorate-
General, National Central Police Station, under
No. 225/2003.bü against KULCSÁR, Attila and his
accomplices, for the crime of embezzlement
committed in respect of especially high value and
other crimes pursuant to Article 1(1), paragraph
(2)(a),(b),(g) and (i), Article 8, Article 15(1)
and Article 17(2) of the Convention on Mutual
Legal Assistance in Criminal Matters executed
between the Government of the Republic of Hungary
and the Government of the United States of America
in Budapest on 1st December, 1994, on the basis of
the enclosed request for legal assistance of the

RECEIVED
OFFICE OF INTERNATIONAL
AFFAIRS
04 JUL 16 PM 4: 37
CRIMINAL DIVISION

182·20 175

2

Metropolitan Chief Prosecutor's Office, the decree of the Central District Court of Pest and that of the Metropolitan Court. --------------------------

We undertake to use the data and documents made available to us only in the criminal procedure carried on in Hungary. --------------------------

I kindly request you to send us the documents produced in the course of providing legal assistance. --------------------------------------

If you need further information regarding the request, please, call ███████████ or fax to ██████████ --------------------------------

I avail myself of the opportunity to express my highest regard and special esteem to the Federal Department of Justice of the United States of America. ---------------------------------------------

Budapest, 18th March, 2004. ----------------------

Yours sincerely, ----------------------------------

illegible signature ----------------------------------

Dr. CSEREI, Gyula, Deputy Prosecutor, Acting Head of Department L.S. ----------------------------------

41512/2004

The Hungarian National Office for Translations and Attestations Co. Ltd. hereby officially certifies that this translation is in full conformity with the original document, or the passage(s) marked therein, attached hereto. Budapest, 10. 05. 2004

for the Director General

41512.DOC

# ORSZÁGOS FORDÍTÓ ÉS FORDÍTÁSHITELESÍTŐ IRODA

Hungarian National Office for Translations and Attestations
Ungarische Amtsstelle für Übersetzungen und Beglaubigungen

Венгерское Государственное Бюро Переводов и Заверений
Bureau National Hongrois de Traductions et de Légalisations

**B U D A P E S T**



Translated from the Hungarian

Metropolitan Chief Prosecutor's Office ------------

Küo.14239/2003/287 -------------------------------

To the United States Department of Justice ---------

Washington ----------------------------------------

Dear Madams/Sirs, --------------------------------

Section Against Economic Crime, Investigation De-
partment, Directorate Against Organized Crime,
General Directorate for Crime, National Police
Headquarters, is conducting an investigation under
No. 255/2003.bü against KULCSÁR, Attila and his
accomplices for the crime of embezzlement commit-
ted in respect of an especially high value and
other crimes ---------------------------------------
For the purpose of blocking funds transferred from
Hungary to American financial institutions, send-
ing documents and other instruments, and providing
information, I request you to --------------------
--------------**provide legal assistance** ------------
to the Hungarian Authorities pursuant to Article
8, Article 15(1), and Article 17(2) of the Treaty
on Mutual Criminal Legal Assistance, signed be-
tween the Government of the Republic of Hungary
and the Government of the United States of America
in Budapest on 1st December, 1994, taking into ac-

33948L.DOC_PS

2

count Article 1(1) and (2)(a), (b), (g) and (i). --
On the basis of the findings of the investigation,
KULCSÁR, Attila, in his capacity as an employee of
K&H Equities Részvénytársaság (and its legal
predecessor, K&H Befektetési Részvénytársaság),
the broker company of Kereskedelmi és Hitelbank
Részvénytársaság, and later in his capacity as its
executive officer, disposed over the funds and se-
curities portfolios of his clients as his own and,
from 1998, without the knowledge and consent of
the concerned parties, effected financial and bank
operating to the debit of the clients' accounts on
the basis of falsified contracts of sale, transfer
orders and transfer certificates. The value in-
volved in the crime exceeds HUF 500,000,000, ac-
cording to the present data, it amounts to HUF
9,500,000,000 approximately. ----------------------

In the course of these activities, KULCSÁR, At-
tila: ---------------------------------------------
- between 14th September, 2001 and 7th March, 2002,
transferred from the securities account of Betonút
Részvénytársaság held with K&H Equities Rész-
vénytársaság, on 29 occasions, securities of an
aggregate stock market value of HUF 2,423,024,470,
to the accounts of various natural and legal per-

3

sons, on the basis of falsified contracts of sale;

- between 14th May, 2002 and 5th March, 2003, ordered the transfer, on the basis of falsified transfer orders, of 27 items of an aggregate of HUF 3,323,000,000 from the account of Betonút Részvénytársaság kept with K&H Equities Részvénytársaság to an account called technical account used for transactions between the organizational units of Kereskedelmi és Hitelbank Részvénytársaság, then ordered the transfer of this amount to the accounts of various natural and legal persons;

- on 29th January, 2003, on the basis of a falsified transfer order, ordered the transfer of HUF 270,000,000 to the debit of the account of Dr. GARAMSZEGI, Gábor, kept with K&H Equities Részvénytársaság, to the technical account of Kereskedelmi és Hitelbank Részvénytársaság and then ordered the transfer of this amount to the accounts of various natural and legal persons; -------------

- between 10th February, 2003 and 15th May, 2003, ordered the transfer, on the basis of falsified transfer orders, of 9 items of an aggregate value of HUF 4,020,000,000 from the account of Állami Autópályakezelő Részvénytársaság kept with K&H ---
Equities Részvénytársaság to the technical account

4

of Kereskedelmi és Hitelbank Részvénytársaság, and
then ordered the transfer of this amount to the
accounts of various natural and legal persons; ----
- on 28th May, 2003, transferred, on the basis of a
falsified transfer order, HUF 31,000,000 from the
account of Betonút Részvénytársaság kept with K&H
Equities Részvénytársaság to the account of Dr.
GARAMSZEGI, Gábor; -------------------------------
- on 17th June, 2003, transferred, on the basis of
a falsified transfer order, HUF 95,000,000 from
the account of Betonút Részvénytársaság kept with
K&H Equities Részvénytársaság to the account of
Dr. TÓTH, Judit; --------------------------------
- on 17th June, 2003, transferred, on the basis of
a falsified transfer order, HUF 155,000,000 from
the account of Betonút Részvénytársaság kept with
K&H Equities Részvénytársaság to the technical ac-
count of Kereskedelmi és Hitelbank Részvénytár-
saság and then to the account of Balmoral Ltd. ----
After that, in order to make up the deficit of HUF
4,020,000,000 unlawfully transferred from Állami
Autópályakezelő Részvénytársaság, KULCSÁR, Attila
ordered, with falsified transfer orders, the
transfer to the account of Állami Autópályakezelő
Részvénytársaság of ----------------------------

5

- HUF 519,740,000 from the account of Autó-Danubia Korlátolt Felelősségű Társaság kept with K&H Equities Részvénytársaság, on 13th May, 2003; ----------
- discount treasury bills in the value of HUF 3,645,610,000 from the account of Betonút Részvénytársaság kept with K&H Equities Részvénytársaság, on 17th June, 2003; ------------------------
- discount treasury bills in the value of HUF 100.990,000 from the account of Betonút Részvénytársaság kept with K&H Equities Részvénytársaság, on 19th June, 2003; ------------------------
- discount treasury bills in the value of HUF 50.000,000 from the account of Dr. GARAMSZEGI, Gábor kept with K&H Equities Részvénytársaság, on 20th June, 2003. ----------------------------------

The financial and banking transactions performed by KULCSÁR, Attila are being cleared up. On the basis of the findings of the investigation revealed till now, his action is suitable for the statement of the crime of embezzlement committed in respect of an especially high value, violating §317(1) of Act IV. of 1978 on the Criminal Code and qualified by virtue of paragraph (7)(a). ----------

The relevant statutory provisions applicable to the crime are as follows: ------------------------

6

§317(1): A person who unlawfully misappropriates a thing placed to his or her care, or disposes of it as his or her own, commits embezzlement. ----------
§317(7): The punishment is imprisonment of five to ten years if embezzlement is committed in respect of an especially high value. ----------------------
In accordance with §138/A(e) of the Hungarian Criminal Code, a value qualified as being especially high if it exceeds five hundred million forints. -------------------------------------------
According to the present facts of the investigation, several bank officials assisted KULCSÁR, Attila in the performance of the above financial and banking transactions – thus REJTŐ, Tibor Endre, former Director-General of Kereskedelmi és Hitelbank Részvénytársaság, TÓTH, Éva, former branch manager, and BALASSA, Katalin and PINIZSI, Hajnalka, bank assistants. ---------------------------
Further facts had arisen confirming that BITVAI, Miklós Ferenc, former Director-General of Állami Autópályakezelő Részvénytársaság and Dr. GARAMSZEGI, Gábor, former financial director of Betonút Részvénytársaság, cooperated with KULCSÁR, Attila in the financial and banking transactions performed to the debit of the accounts of their

7

companies. ----------------------------------------
The funds transferred as a result of the financial
and banking transactions to the technical account
of Kereskedelmi és Hitelbank Részvénytársaság were
in most cases re-transferred by KULCSÁR, Attila to
the account of Britton Interinvest Llc., a client
of the bank. -----------------------------------
From the accounts of Britton Interinvest Llc.,
with the cooperation of MÉSZÁROS, János and Dr.
FUTÓ, Erika Erzsébet, having sole disposal right
over the account, the funds were transferred to
the accounts also kept with Kereskedelmi és Hitel-
bank Részvénytársaság of Montrade Establishment
Ltd. and Balmoral Group Llc. financially con-
trolled by the company. --------------------------
A part of the money received on these accounts was
transferred to the accounts of El Abed Hasan and
Mahmoud Abdo, Syrian citizens, kept with Inter-
Európa Bank Részvénytársaság and OTP Bank Rész-
vénytársaság, from where the above named persons,
aware of the fact that the money comes from crime
punishable by imprisonment, collected the money
and gave it through SZEKÉR, Gyula to KULCSÁR, At-
tila and third persons named by him. -------------
The other part of the money was transferred from

33948L.DOC

8

the accounts of Montrade Establishment Ltd. and Britton Interinvest Llc. to the accounts of other natural and legal persons kept with Hungarian banks or banks seated abroad. --------------------- The action of MÉSZÁROS, János, Dr. FUTÓ, Erika Erzsébet, El Abed Hasan, Mahmoud Abdo and SZEKÉR, Gyula is suitable for the statement of the crime of money laundering committed in a businesslike manner in respect of a value exceeding an especially high value, violating §303(1) of Act IV of 1978 on the Criminal Code and qualified by virtue of paragraph (2)(a) and (b). --------------------- The relevant statutory provisions applicable to the crime are as follows: ------------------------- §303(1) A person who uses a thing originating from a crime punishable with imprisonment in the course of his business activities for the purpose of concealing its origin or performs any financial or banking transaction in relation to the thing, commits a crime. ------------------------------------ §303(2) The punishment is imprisonment from two years up to eight years if money laundering is committed ------------------------------------ a) in a businesslike manner ----------------------- b) in respect of an especially high value or a

33948L.DOC

9

value exceeding it. ------------------------------
Pursuant to §137(9) of the Hungarian Criminal
Code, a crime is committed in a businesslike man-
ner if a person intends to derive regular profit
by committing the same or similar crimes. In ac-
cordance with §138/A(d) of the Act, a value is
deemed to be especially high if it exceeds fifty
million forints but is less than five hundred mil-
lion forints. ------------------------------------
Pursuant to §77/B(1) of Act IV of 1978 on the
Criminal Code, confiscation of property must be
ordered in respect of property originating from
crime, acquired by committing the crime or in re-
lation to it. In accordance with paragraph (2),
confiscation of property must be ordered in re-
spect of property originating from committing the
crime or in relation to it, increasing the assets
of another person. If it was a business associa-
tion, the assets of which were increased by such
property, then confiscation must be ordered
against such business association. ----------------
In accordance with §159(2) of Act XIX of 1998 on
the Criminal Procedure, a court may order impound-
ment for the purpose of property confiscation. ----
By its decree No. 5.Bny.40018/2003/3 becoming fi-

10

nal and absolute on 10th December, 2003, the Central District Court of Pest ordered the impoundment of the entire property - among others - of REJTŐ, Tibor Endre.-------------------------------

Enclosed, please, find a copy of the decrees of the first and second instance, ordering impoundment. ------------------------------------------------

According to the available data, REJTŐ, Tibor Endre has a bank account at **JPMorganChase** (United States of America, New York, 10017, 270 Park Avenue) under No. ████████████-------------------------

The particulars of persons, suspects in the case:-

| Name of the suspect | Data of birth | Mother's name: | Address: |
|---|---|---|---|
| KULCSÁR, Attila<br>Hungarian citizen | | | |
| REJTŐ, Tibor Endre<br>Canadian-Hungarian<br>citizen | | | |
| Dr. GARAMSZEGI,<br>Gábor<br>Hungarian citizen | | | |
| BITVAI, Miklós<br>Hungarian citizen | | | |
| El Abed Hasan<br>Syrian citizen | | | |
| Mahmoud Abdo<br>Syrian citizen | | | |
| Dr. FUTÓ, Erika Erzsébet<br>Hungarian citizen | | | |
| MÉSZÁROS, János<br>Hungarian citizen | | | |
| TÓTH, Éva<br>Hungarian citizen | | | |
| BALASSA, Katalin<br>Hungarian citizen | | | |
| PINIZSI, Hajnalka<br>Hungarian citizen<br>Budapest, 28/04/1975 | | | |
| SZEKÉR, Gyula<br>Hungarian citizen | | | |

From among the above persons, KULCSÁR, Attila has been in arrest in the Republic of Austria since

33948L.DOC

11

17th Júly, 2003, awaiting extradition, while an in-
ternational warrant for arrest has been in effect
against Mahmoud Abdo since 28th August, 2003.------

Other offshore business companies that are related

to the crime: -------------------------------------

| Company name | Company address | Founders | Date of foundation | Known company managers | Persons holding the right of disposal in respect of the account kept with K&H Bank Rt. |
|---|---|---|---|---|---|
| Pacific Traders Company LLC. | Ireland, Dublin 2, 58 Fitzwilliam Sqr. Suite 3 | | | | |
| Britton Interinvest Ltd. | USA, Washington, Everett, 3306 Wetmore Avenue/2910 Colby Ave., Ste. 200, Everett WA 98201, USA | | | | |
| Atlantic Busi-ness Finance Ltd. | USA, Washington, Everett, 3306 Wetmore Avenue | | | | |
| Canadian Merchant Trading Inc. | USA, Delaware, 15 East North Street, Dover, De 19901 | | | | |
| Megastar Trading Co. | USA, Delaware, Dover 1050 State Str. | | | | |
| Feldman Management B.V. | British Virgin Islands, Tortola, Road Town, Wickhams Cay, Trident Chambers | | | | |
| Britalia Intenvesi Ltd. | British Virgin Islands, Tortola, Road Town, Wickhams Cay, Trident Chambers | | | | |
| Lobagola Investment Inc. | USA, Delaware, Dover 9E, Loockerman St. Ste. 205 | | | | |
| Intercorp Holdings Llc. | USA Washington, Everett 3306, Wetmore Avenue | | | | |
| First Capital Irvest Llc. | USA Washington, Everett 3306, Wetmore Avenue | | | | |
| Globe International Investment | British Virgin Islands, Tortola, Road Twon, Wickhams Cay 1 Vanterpool Plaza | | | | |
| Glendale Inter-management SA | British Virgin Islands, Tortola, Road Twon, Wickhams Cay Trident Chambers | | | | |
| American-Hungarian Fashionhouse Inc. | USA, New York, Kehonkson 406, Samsonville Road | | | | |
| Inter Capital Projects Ltd. | British Virgin Islands, Tor- | | | | |

33948L.DOC

12

| | |
|---|---|
| | tola, Road Twon, Wickhams Cay Trident Chambers |
| The Montrade Establishment Ltd. | Ireland, Dublin, 14, Churchtown 6C Beaumont Avenue, Grange House/Ireland, Cork, Kiemar House, Shanakiel Road, Sundays Well |
| Balmoral Group Llc. | USA, Nevada, Carson City, Suite 212, 1082 N. Carson Street/United Kingdom, London W1V 3FA193 Wardour Street |
| Ashmore Investments Llc. | USA, Delaware, Suite 300A, Two Greenville Crossing 4001 Kennett Pike, PO Box 4477, 19807-0447 |
| Geometax Holdings Ltd. | Cyprus, Limassol, Kanika Alexander Ctr. Block 1 |

**I request you** ---------------------------------------

1) to take the necessary measures in order to prevent disposal of the funds on the account kept with **JPMorgan Chase** under No. ███████---------

2) to send us the data related to the account kept under the name of REJTŐ, Tibor Endre with **JPMorgan Chase** under No. ██████ and to any other account, as well as the data related to the sub-accounts, if any, including the names of those having the right of disposal, their particulars, the initial and closing documents, the statements of account transactions concerning transactions effected between 1st January, 2001 and 31st July, 2003, including the number of the counter-account and the name of the account keeping financial institution; ---------------------------------------

33948L.DOC

13

3) in order to identify and trace the funds origi-
nating from crime and to acquire the evidence re-
garding the whereabouts and movements of such
funds, please, provide information whether the
persons identified as suspects during the investi-
gation and the off-shore business associations
that can be related to the crime hold any account
at any financial institution operating on the ter-
ritory of the United States of America. If yes,
please, send the initial and closing documents
concerning the account and the statements regard-
ing transactions performed on the accounts between
1st January, 2001 and 31st July, 2003, too, includ-
ing the number of the counter-account and the name
of the account managing financial institution; ----
4) a copy of the deed of establishment and of the
documents drawn up in the course of operation and
– if terminated – upon termination of those compa-
nies which are included in the above table and are
seated in the United States of America on the ba-
sis of the available data: **Britton Interinvest
Llc., Atlantic Business Finance Llc., Megastar
Trading Co., Lobagola Investment Inc., First Capi-
tal Invest Llc., American-Hungarian Fashionhouse
Inc., Canadian Merchant Trading Inc., Balmoral**

14

Group Llc.; -------------------------------------

5) if the above business associations or any of them qualifies as an off-shore company in relation to the United States of America, then, for the purpose of identifying the real owners as witnesses, please, hear the representatives of such companies the witnesses as to who their appointers, the companies' founders and the owners are, who bore the costs incurred by the incorporation of such companies in the United States of America, and what other data they have regarding the persons, the financial institutions, etc. ----- In the course of the hearing of the witnesses, in accordance with Article 4(1)(e) of the Treaty on Mutual Legal Assistance in Criminal Matters signed in Budapest on 1st December, 1994 between the Government of the Republic of Hungary and the Government of the United States of America, please, proceed as follows: --------------------------------- Pursuant to §81(1)(a) to (c) of Act XIX of 1998 on the Criminal Procedure, cannot be heard as a witness a priest or a clergyman about things in respect of which he is bound by confidentiality by right of his profession, a defense counsel about things of which he is aware in his capacity as a

33948L.DOC

15

defense counsel, or things which he told the ac-
cused in his capacity as a defense lawyer, a per-
son who obviously cannot be expected to give
proper evidence due to his physical or mental
state. A person who has not been relieved from
confidentiality cannot be heard as a witness in
respect of facts qualified as state secret or
service secret in accordance with paragraph (2).
Taking into account §82(1)(a) to (c) of the Act, a
relative of the accused can refuse to give evi-
dence; a person who, except for the case included
in paragraph (4), would accuse himself or his
relative with the commission of crime, in relation
to such issues, even if he would not refuse to
give evidence by virtue of point (a), and not in-
cluding the confidentiality obligation included in
§81(2), a person who is bound by confidentiality
by right of his profession or public assignment if
he would commit a breach of such confidentiality
obligation, unless he has been relieved from such
obligation by the beneficiary in accordance with a
special law, or if in accordance with a special
law, at the request of the court, the prosecutor,
or the investigation authority, the disclosure of
confidential data is compulsory to the persons en-

16

titled to acquittal. ------------------------------
By virtue of §82(2) and (3) of Act XIX of 1998 on
the Criminal Procedure, the witness must be in-
formed of the causes of exemption and his rights
must be read out to him. The fact of the reading
out of the rights and the witness's response must
be recorded in the minutes. If his rights are not
read out to the witness then his testimony cannot
be used as means of evidence. The acting court,
the prosecutor or the investigating authority will
decide whether the refusal is rightful. -----------
In accordance with §85 of XIX of 1998 on the
Criminal Procedure, the witnesses must be heard
one by one. In the beginning of the hearing, the
witness must be asked about his name, date and
place of birth, mother's name, domicile and place
of stay, his occupation, the number of his iden-
tity card, the fact whether he is a relative of
the accused or aggrieved party, the fact whether
he is interested or partial in the case for any
other reason. The witness must answer these ques-
tions even if otherwise he is entitled to refuse
to give testimony. At the beginning of the hearing
it must be cleared up whether there is any obsta-
cle to the witness's testimony (§81 and §82). If

17

there is no obstacle to the witness's testimony, he must be warned that he must tell the truth according to the best of his knowledge and conscience and must be informed of the consequences of perjury. The warning and the witness's answer to the warning must be recorded in the minutes. The attorney proceeding on behalf of the witness can be present during the hearing of the witness and may inform him of his rights but cannot do anything else and must not influence the testimony. He may view the minutes drawn up of the hearing after it has finished and may make comments in writing or in verbal form. Pursuant to §88, in the course of the investigation, the witness answers the questions asked, but he must also be given the opportunity to give his evidence in an uninterrupted form; in the course thereof, taking into account the rules applying to the protection of witnesses, it must be cleared up how the witness learnt about the facts included in his statement. If his evidence differs from an evidence given by him earlier, the cause must be cleared up. In the same stage of the procedure, when the witness is repeatedly heard, his particulars - if they have not changed - need not be re-

18

corded. At the request of the witness, certain parts of his evidence must be recorded in the minutes word for word. ------------------------------

The evidence given by the witness must be included in minutes taking into account §166 of XIX of 1998 on the Criminal Procedure. The minutes are drawn up by the minutes keeper or a member of the investigation authority. The minutes must include the following: -----------------------------------------

a) the name of the acting authority; --------------

b) the description of the crime serving as a basis of the procedure and the name of the suspect; -----

c) the place, date and time of the investigating action; ---------------------------------------------

d) the name of the prosecutor, member of the investigation authority, the person taking part in the procedure and his representative, the witness, the attorney acting on behalf of the witness, the official witness, and the minutes keeper present at the hearing; -----------------------------------

e) the name of the heard accused and witness and expert as well as other legally prescribed particulars. ------------------------------------------

The minutes must include the course of the investigation action in order to allow the checking of

19

whether the procedural rules are kept. The minutes must contain the testimony given by the suspect and the witness as well as the motions and comments made in the course of the investigation in due detail. The heard person may propose to include his testimony in the minutes word for word. The minutes must be signed by the investigating prosecutor, the member of the investigating authority, and the minutes keeper. The suspect, the witness and the interpreter must sign each page of the minutes. If the accused, the witness or the interpreter refuses to sign the minutes, this fact and the stated or known reason must be recorded in the minutes. If the suspect, the defense counsel, the aggrieved party, other interested party, the witness, or the counsel proceeding on his behalf present at the investigation action request the inclusion in the minutes of an event or declaration related to the procedure, it can only be refused if the prosecutor or the member of the investigating authority has no knowledge of such event or declaration. ----------------

5) please, also provide information whether there is any criminal procedure pending on the basis of the above facts of the case, and in relation to

20

the actions in the case. If yes, please, also in-
form us of the names and particulars of the per-
sons taken to account and send us a copy of the
trade register extracts of the involved business
associations. ------------------------------------

Further I request you to provide all such relevant
information within the framework of the legal as-
sistance which may contribute to the success of
the investigation carried on in Hungary. ----------

I also avail myself of the opportunity to express
my regard and distinguished respect to the Minis-
try of Justice of the United States of America. ---

Budapest, 4th March, 2004. ------------------------

Please, take my highest regard: ------------------

illegible signature ------------------------------

Dr. SÓDOR, István, Chief Prosecutor of the Capital

L.S. ---------------------------------------------

33948/2004
The Hungarian National Office for Translations and
Attestations Co. Ltd. hereby officially certifies that this
translation is in full conformity with the original
document, or the passage(s) marked therein, attached hereto.
Budapest,                            26. 04. 2004

for the Director General

33948L.DOC